**Frances P. DANIELS, mother, Plaintiff,**

**v.**

**HADLEY MEMORIAL HOSPITAL et al., Defendants.**

**Civ. A. No. 74-1162.**

United States District Court, District of Columbia.

Sept. 12, 1975.

George W. Shadoan, Shadoan & Mack, Rockville, Md., for plaintiff.

Laurence T. Scott, Brault, Graham, Scott & Brault, Washington, D.C., for defendant, Dr. Johnston.

MEMORANDUM OPINION

RICHEY, District Judge.

I. INTRODUCTION

This action has come on before the Court on the motion of defenuant Christina Chan Johnston, M.D., pursuant to Rule 26(c), F.R.Civ.P., for a protective order. Defendant Dr. Johnston seeks to prevent the production of a statement she gave to Mr. John Brady during an investigation of Dr. Johnston by Mr. Brady, and also to prohibit the taking of Mr. Brady's deposition. Mr. Brady is an adjuster with the Hartford Insurance Company, the insurer of Dr. Johnston. Mr. Brady's investigation occurred subsequent to the filing of a complaint against Dr. Johnston and others for medical malpractice, negligence, survival and wrongful death.

The essential facts are as follows: The complaint was filed on August 2, 1974. Dr. Johnston's defense was undertaken by the firm of Brault, Graham, Scott & Brault, Washington, D. C., and specifically by F. Wainwright Barnes, Esquire. The file was referred to him on August 30, 1974, by a letter which stated that Mr. Brady was going to make an investigation. Mr. Barnes did not give any specific instructions to Mr. Brady nor did he ask him to take Dr. Johnston's statement. Mr. Brady took a recorded statement from Dr. Johnston on September 10, 1974. The next day, Mr. Brady telephoned George W. Shadoan, Esquire, counsel for the plaintiff. It is undisputed that during this conversation, Mr. Brady conveyed to Mr. Shadoan certain portions of Dr. Johnston's statement of September 10. Mr. Brady's formal report was prepared on September 16, 1974. On September 18, 1974, Mr. Shadoan received a letter from Mr. Brady who stated that the investigation would continue

and that Mr. Brady would "be back in touch with [Mr. Shadoan] in the near future." In the letter, Mr. Brady also referred to the previous telephone conversation with Mr. Shadoan.

On March 3, 1975, the deposition of defendant Dr. Johnston was taken. During the deposition, Mr. Shadoan read to Dr. Johnston the notes he had taken of his telephone conversation with Mr. Brady and questioned her as to the accuracy of the statements. Dr. Johnston admitted making a statement, noted that she thought it was recorded, and confirmed some parts of the statement she had made to Mr. Brady (as recounted by Mr. Shadoan) and denied other parts.[1] On March 5, 1975, in response to a copy of a letter he had received, Mr. Brady telephoned Mr. Shadoan, during which they discussed what was said in the original September 11, 1974 conversation. Thereafter, Mr. Shadoan noticed Mr. Brady's deposition and added that he was to produce a copy of the statement of Dr. Johnston at the deposition. Defendant Dr. Johnston thereupon moved for a protective order.

In response to the briefs and other papers filed with respect to this matter, the Court propounded certain questions to the parties, two of which are particularly important to an understanding of the factual setting of this case. In answering the first question, "Is or was Mr. Brady's report in the files of counsel for the defendant?", defendant Dr. Johnston stated that "it was in the files of counsel for the defendant but it probably was not in the files of counsel for the defendant before the first telephone conversation was had with Mr. Shadoan." As to the second question, "Was the report prepared at the behest of an attorney and, if so, who, or was it prepared in the normal course of Mr. Brady's duties?", defendant Dr. Johnston responded that although it was not prepared at the specific request of an attorney, such a request was unnecessary since Mr. Brady's referral letter clearly stated that he was going to take the statement of Dr. Johnston.

It is the contention of defendant Dr. Johnston that neither Mr. Brady's deposition nor the release of her statement to him should be permitted since, she argues, the statement is protected by the work-product rule. Plaintiff argues that the rule does not apply to the facts of this case, and that even if it does, any protection has been waived.

## II. THE WORK-PRODUCT RULE IS INAPPLICABLE TO A STATEMENT OF A PARTY; RATHER, IT MAY BE PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE

The arguments of the parties present a perplexing situation. The defendant seeks to protect a party's statement to an agent of the attorney by asserting the work-product rule. It is well-settled that a statement by a party to an agent or representative of the party's attorney is protected by the attorney-client privilege. *See, e. g., United States v. Kovel*, 296 F.2d 918, 920–22 (2d Cir. 1961). The attorney-client privilege, however, is distinct from the protection that attaches to the work-product of the attorney. *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451 (1947). And, although under the work-product rule, statements to an agent or representative of the attorney are protected, *id*; see also *McDougall v. Dunn*, 468 F.2d 468, 473 (4th Cir. 1973); *Miles v. Bell Helicopter Corp.*, 385 F.Supp. 1029, 1032–33 (N.D. Ga.1974); *Thomas Organ Co. v. Jadranska Slobodna Plovida*, 54 F.R.D. 367, 372 (N.D.Ill.1972), such statements are discussed in terms of witnesses[2] and

1. Deposition of Dr. Johnston at 30–33, March 3, 1975.

2. The Court in *Hickman* did not expressly exclude the statement of a party from the

not parties. Moreover, while the terms "witness" and "party" are not exclusive generally, there are theoretical differences [3] between the attorney-client privilege and the work-product rule, which make the latter inapplicable to parties.

In the recent case of *United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), Justice White, concurring, discussed the work-product rule with respect to pretrial and trial requests for discovery from an adversary of the statement of a witness, *id.* at 242, 95 S.Ct. at 2172–78.

In Justice White's view:

> "The important question is whether the document (containing the witness' statement) is sought for evidentiary *or impeachment* purposes or whether it is sought for preparation purposes only."

*Id.* at 252, 95 S.Ct. at 2177 n. 12. With respect to pretrial requests for the statement of a witness, he noted that:

> "Since prior statements are inadmissible hearsay until the witness testifies, there is no occasion for ordering reports of such statements produced as evidence *pretrial.* However, some courts have ordered witness statements produced pretrial in the likelihood that they will *become* impeachment evidence."

*Id.* at 251, 95 S.Ct. at 2176. (footnote omitted) (emphasis in original). That this analysis is exclusively applicable to witnesses as opposed to parties is evident. For, if a statement of a party were sought for impeachment purposes and could be disclosed on this basis alone, it would undermine the purpose behind the attorney-client privilege. It is readily predictable that permitting disclosure of the statement of a party given to the attorney, or the agent or representative of the attorney, on the mere showing that it might become impeachment evidence, would erode the confidence deemed essential to the free flow of information between client and attorney. *See* 8 Wigmore, *Evidence* § 2791 (McNaughton rev. 1961); M. Freedman, *Lawyers' Ethics in an Adversary System* 5 (Bobbs-Merrill, 1975).

But, the refusal to include the statement of a party within the work-product rule does not lay bare such statement, for it is protected by the attorney-client privilege. *See United States v. Kovel, supra.* The dilemma in this case, however, is that the defendant has sought to prevent disclosure of her statement to the agent of the attorney on the basis of the work-product rule

work-product rule; however, it did exclude the statement of a witness from the attorney-client privilege: "the protective cloak of [the attorney-client] privilege does not extend to information which an attorney secures from a witness while acting for his client . . . ." 329 U.S. at 508, 67 S.Ct. at 392 for the obvious reason that witnesses' statements are not confidential communications and therefore are, by their very nature, not within the ambit of the attorney-client privilege. *See McCall v. Overseas Tankership Corp.,* 16 F.R.D. 467, 469 (S.D.N.Y.1954). Conversely, the statement of a party does come within the theory of the work-product rule. See Note 3, *infra.* Thus, it is understandable that discussion of the work-product rule by commentators has been with respect to "discovery of witness statements" and not statements of parties. *See,* e. g., 4 J. Moore, *Federal Practice,* ¶¶ 26.63[7] and [8], specifically at 26–379 (1974).

3. While it may be said that both the attorney-client privilege and the work-product rule aid in maintaining the adversary process of adjudicating facts, the former does not depend upon the initiation or contemplation of litigation, *see* 8 *Wigmore* §§ 2294 and 2295, whereas the advent of litigation is an essential element of the work-product rule, *see Thomas Organ Co., supra,* at 372. The most obvious distinction between the two is, of course, that the attorney-client privilege seeks to protect all confidential communications between the attorney and client, whereas the work-product rule protects the lawyer's own "legal theories" and "strategy." *Hickman, supra,* 329 U.S. at 510, 67 S.Ct. 385.

and not the attorney-client privilege.[4] Since the defendant has failed to assert the attorney-client privilege, this Court has no choice but to consider it as waived.[5] McCormick, *Evidence*, § 92, at 194 (2d ed. 1972). And, since this Court finds the work-product rule inapplicable in this case, any protection on that basis is also unavailable.

While it may appear too harsh to deny the defendant's statement any protection whatsoever because of an erroneous characterization of the privilege, it is unnecessary for the Court, in the interest of fairness, to either treat the defendant's assertion of the work-product rule as a mistaken invocation of the attorney-client privilege or proceed under the work-product rule analysis and treat the statement as though it were from a witness,[6] for the Court finds that any protection that may have been afforded the statement was waived by the defendant at her deposition.

## III. THE DEFENDANT, WHO WAS NEITHER SURPRISED NOR MISLED, WAIVED ANY PROTECTION FOR HER STATEMENT, IN ITS ENTIRETY, BY TESTIFYING ABOUT THE STATEMENT AT HER DEPOSITION

There is no question that the attorney-client privilege may be waived, and it is also settled that: "The privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived." *Nobles, supra,* 422 U.S. at 239, 95 S.Ct. at 2170. And, one method of waiver is "by testimony of the client in an examination before trial." *Wild v. Payson*, 7 F.R.D. 495, 500 (S.D.N.Y.1946). Such a waiver is found in this case.

At her deposition, Dr. Johnston, in response to questions put to her by plaintiff's counsel, admitted that she had given the statement to the agent, and confirmed some parts of the statement and denied other parts. See text accompanying note 1, *supra.* As noted above, testifying in examination before trial is a waiver of the privilege as to the communications disclosed. And it need not be shown that the defendant knowingly waived the privilege, for partial disclosure itself is considered sufficient under the notion that "it is unfair for the client to insist on the privilege thereafter." *McCormick, supra,* § 93, at 194 and 194 n. 14. Thus, the Court concludes that there was a waiver in this case, even though Dr. Johnston may not have intended to waive the privilege.

Furthermore, counsel has not shown that there were any special circumstances which would show that she was surprised or misled. *See McCormick, supra,* § 93 at 195. On the contrary, there have been both letters of counsel and the minutes of telephone conversations submitted to the Court which clearly demonstrate that defendant's counsel knew that plaintiff's counsel had been told not only of the fact of the statement of Dr. Johnston to Mr. Brady, but also the substance thereof, prior to the taking of Dr. Johnston's deposition. Defendant's counsel were therefore in a position to anticipate that plaintiff's

4. The defendant's assertion of the work-product rule as opposed to the attorney-client privilege is evident in the pleadings. For example, even in discussing the question of whether a statement to an agent is afforded the same protection as if it were given to the attorney, the defendant argues: "It seems clear that if the statement were taken by the [attorney] for Christina Chan Johnston, then immunity would be given as a work product." Supplemental Memorandum in Support of Defendant Johnston's Motion for a Protective Order, at 3 (May 8, 1975).

5. There is no indication that the attorney-client privilege was even asserted at the deposition of the defendant.

6. Notably, the plaintiff's opposition to the defendant's motion for a protective order also focused on the work-product rule, claiming that it was inapplicable because the agent had not taken the statement at the request of counsel, and, alternatively, that plaintiff had shown a sufficient need pursuant to Rule 26(b)(3), F.R.Civ.P., for the Court to permit discovery.

counsel would question Dr. Johnston about her statement to the insurance adjuster.

Having found that defendant Dr. Johnston herself waived the protection that would have been afforded her statement, it is unnecessary to consider the plaintiff's other arguments that Mr. Brady's conversations with plaintiff's counsel constituted a waiver, and that the plaintiff has demonstrated a substantial need of the materials, and that plaintiff is unable to obtain the substantial equivalent without undue hardship, in accordance with Rule 26(b)(3), F.R.Civ.P.

## IV. AN AGENT OF A PARTY'S ATTORNEY MAY BE DEPOSED FOR INFORMATION RELEVANT TO THE LITIGATION, EXCEPT IF THE INFORMATION IS PRIVILEGED, BUT IF THE PRIVILEGE IS WAIVED BY THE CLIENT, THE AGENT OF THE ATTORNEY MAY BE DEPOSED ALSO AS TO THAT INFORMATION, SUBJECT TO THE SCOPE OF THE WAIVER

The defendant maintains that although her statement is to be disclosed, the Court should not permit the agent to be deposed. The defendant's arguments that the agent's deposition should not be permitted because it would be disruptive to the insurance field generally, and because the agent is not knowledgeable in Dr. Johnston's profession, anesthesiology, and therefore should not be "permitted to give his opinion or his understanding of what her words meant or what she meant by them," are not persuasive.[7] Rather, the dispositive question is whether the agent may be deposed after there has been a waiver.

As noted above, statements of a party to an agent or representative of the attorney are afforded protection by the attorney-client privilege. Thus, the agent or representative stands in the shoes of the attorney, and should be deposed only if the attorney may, in the same situation, be deposed.

It has been recognized as a general principle that: "An attorney for a party may be examined, subject to objections of privilege." 4A J. Moore, *Federal Practice* § 30.51 at 30–40 (1974); see also Wright & Miller, *Federal Practice and Procedure*, Civil § 2102, at 369–70 (1970). The question, in turn, is whether the attorney may be deposed following a waiver. It is logical that he may, for if the only ground upon which an attorney may object to being deposed is the attorney-client privilege, which belongs to the client, when the privilege is lost, there is no longer any basis for objection. And, the same is true for the agent of the attorney.

While the taking of an attorney's deposition is not common, it is not without precedent. In *In Re Penn Central Commercial Paper Litigation*, 61 F.R.D. 453 (S.D.N.Y.1973), Judge Edelstein was presented with this question and permitted the deposition of an attorney after finding that there had been a waiver of the attorney-client privilege. His analysis proceeded as follows: (1) "if the information sought is relevant to the subject matter of the litigation it is discoverable unless privileged," *id.* at 460; (2) "an attorney may be deposed" to obtain such information unless it is protected by the attorney-client privilege, *id.* at 463–464; (3) the privilege is the client's, and is waived unless asserted, *id.* at 463; (4) thus if the privilege is waived, there is no basis for preventing the deposition of the attorney, *id.* at 464 (footnotes omitted). This Court fully concurs in this reasoning, which is

7. As noted earlier, generally, the statement to the agent would have been protected under the attorney-client privilege. See page 585, *supra*. Thus, there is little reason to fear that the insurance field will be inhibited when one agent is deposed subsequent to a waiver by the client. And, while it is apparent that Mr. Brady is not an expert on anesthesiology, there is no indication that the plaintiff intends to offer his deposition testimony as such.

equally applicable to the agent of the attorney. Therefore, this Court must deny the defendant's motion for a protective order.

This Court also agrees with Judge Edelstein, however, that once the information sought—here, the written statement of Dr. Johnston—is disclosed, there should be no real need to take the deposition of the agent of the attorney. *See* 61 F.R.D. at 468. However, if the plaintiff insists upon taking the deposition, he will be free to do so, subject to the caveat that such examination must be limited to the scope of the waiver.[8] It is premature, however, to "try to limit or fix the scope of examination" prior to the deposition, *Shiner v. American Stock Exchange*, 28 F.R.D. 34, 35 (S.D. N.Y.1961); rather, this must be resolved in the context of a particular inquiry to the agent.

An order in accordance with the foregoing shall be issued of even date herewith.

8. The general rule is that: "The client's offer of his own or the attorney's testimony as to part of any communication to the attorney is a waiver as to the whole of the communication . . . ." 8 *Wigmore*, § 2327, at 633. Thus, Dr. Johnston's statement to the agent of the attorney, Mr. Brady, must be produced in its entirety. However, examination of Mr. Brady may not thereby extend to other communications, even if they may in some way be related.