Wayne P. Williams, Asst. U.S. Atty., Alan L. Cohen, Washington, D.C., for defendant.

Mattie Brown **MEWBORN** (Personal Representative of the Estate of Donnierico Mewborn, Deceased), Plaintiff,

v.

Margaret M. **HECKLER,** Secretary, U.S. Department of Health and Human Services, Defendant.

**Civ. A. No. 83–1844.**

United States District Court, District of Columbia.

March 6, 1984.

## MEMORANDUM OPINION AND ORDER

ARTHUR L. BURNETT, United States Magistrate.

Before the Magistrate is plaintiff's motion to compel the defendant, pursuant to Rules 34 and 37, Federal Rules of Civil Procedure, to produce:

> "All investigative reports with reference to the incident of June 4, 1980, that is the subject of this action, and not otherwise privileged, and that were filed with:
>
> (a) The head administrator of St. Elizabeths Hospital;

(b) The head administrator of John Howard Pavilion;

(c) The Public Health Service;

(d) The Department of Health and Human Services;

(e) Any internal or investigative agency located or affiliated with any of the above, having jurisdiction or charge of investigating the incident that is the subject of this suit."

The plaintiff also seeks to compel the production of the minutes, reports, notes, or other documents generated by the meeting of any committee of physicians conducting a "peer review" with respect to the treatment of Donnierico Mewborn. The defendant objected to both requests on the grounds that the documents were privileged either as attorney work product or under *Bredice v. Doctors Hospital, Inc.*, 50 F.R.D. 249 (D.D.C.1970), *aff'd.*, 479 F.2d 920 (1973).

To place this discovery dispute in context, a brief summary of the nature of the case is warranted. On June 24, 1983 plaintiff as the personal representative of the estate of Donnierico Mewborn, deceased, filed suit under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, for the wrongful death of the decedent, who committed suicide in Saint Elizabeths Hospital on June 4, 1980. The complaint alleges that on November 19, 1979, in the Superior Court of the District of Columbia, Mr. Mewborn was found not guilty by reason of insanity on charges of armed robbery and assault with a dangerous weapon in *United States v. Mewborn*, Case No. F 3792–79 C & D, and thereafter he was committed to the custody of Saint Elizabeths Hospital. Plaintiff alleges that Mr. Mewborn had previously attempted suicide at the District of Columbia Jail in May, 1978, as well as on other occasions, and that Saint Elizabeths Hospital records reflected this medical history, including a record of his suicide attempts and suicidal tendencies. Plaintiff further alleges that on June 4, 1980 Mr. Mewborn was left unattended, unsupervised, and completely alone while other patients left the ward to eat breakfast at 8:00 a.m., and as a result of the negligence of the staff in providing inadequate and insufficient supervision of the patients and of the Hospital administration adequately to staff John Howard Pavilion, Mr. Mewborn was successful in committing suicide. For the wrongful death, plaintiff seeks damages of $1,000,000, "plus costs, fees and disbursements in pursuit of this action." Plaintiff also alleges negligence resulting in personal injury in a separate count, seeking $500,000, "plus costs, fees and disbursements."

The motion to compel was orally made by plaintiff's counsel at a hearing on other matters before the Magistrate on February 6, 1984. In order to expedite resolution of the discovery dispute on the above issues, the Magistrate then heard oral argument of counsel and granted them leave to submit post-argument memoranda. They have now done so.

In *Bredice, supra,* in referring to the evaluations of "peer review" committees in a hospital, the court observed:

"Confidentiality is essential to effective functioning of these staff meetings; and these meetings are essential to the continued improvement in the care and treatment of patients. Candid and conscientious evaluation of clinical practices is a *sine qua non* of adequate hospital care. To subject these discussions and deliberations to the discovery process, without a showing of exceptional necessity, would result in terminating such deliberations. Constructive professional criticism cannot occur in an atmosphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit.

The purpose of these staff meetings is the improvement, through self-analysis, of the efficiency of medical procedures and techniques. They are not a part of current patient care but are in the nature of a retrospective review of the effectiveness of certain medical procedures. The value of these discussions and reviews in the education of the doctors who partici-

pate, and the medical students who sit in, is undeniable. This value would be destroyed if the meetings and the names of those participating were to be opened to the discovery process." 50 F.R.D. at 250.

The question is whether the foregoing principles and rationale should apply to the facts of this case involving an individual in a mental hospital as a result of an adjudication of not guilty by reason of insanity.

This Magistrate concludes that the principles enunciated in *Bredice, supra,* in 1970 are still viable today and indeed there may be even greater reason to preclude such discovery in view of the recent amendments to the Federal Rules of Civil Procedure, effective August 1, 1983, to curtail discovery abuse and to limit discovery to what is necessary to develop the facts which will support a litigant's claim. The amendment to Rule 26(b) is specifically directed to limiting discovery, where the discovery sought is obtainable from "some other source that is more convenient, less burdensome, or less expensive." Applying this rationale where the raw factual data can be obtained from hospital reports and records, there would be no need to require the report of a "peer review" committee setting forth evaluations, opinions, or findings from a retrospective view of a given fact situation.

Such an approach is also consistent with the policy of the District of Columbia as set forth in legislation. Specifically, D.C.Code § 32–505, enacted June 27, 1978, provides:

"(a) Absent a showing of extraordinary necessity, the minutes, analyses, preliminary and final findings and reports of a medical utilization review committee, peer review committee, medical staff committee or tissue review committee shall not be subject to discovery or admissible into evidence in any civil or administrative proceeding. This qualified privilege does not extend to primary health records or to any oral or written statements submitted to or presented before a medical utilization review committee, peer review committee, medical staff committee or tissue review committee."

This legislation, enacted after *Bredice,* clearly contemplates that in the ordinary situation the primary health records and any oral or written factual statements can be disclosed. Absent a showing of "extraordinary necessity" to have the opinions or evaluation of a "peer review" committee or other medical evaluation committee, such committees' reports should not be produced, especially where the plaintiff is provided all the raw factual data available. Indeed, counsel for the plaintiff appears to acknowledge as much in observing:

"If we can have the raw reports we can have our own experts draw their own conclusions and, within limits, they will replicate the conclusions of the committee's reports now withheld from us."

This, of course, presupposes an agreement among experts. Where a plaintiff is furnished with the raw factual data in a civil case, no prejudice can result to the plaintiff who can have his or her own experts assess that factual information. On the other hand, to disclose medical opinions, evaluations or findings could be inimical to the medical interest of improving the care and treatment afforded patients in hospitals generally. *Accord, Gillman v. United States,* 53 F.R.D. 316 (S.D.N.Y.1971).

Plaintiff has cited *Davidson v. Light,* 79 F.R.D. 137 (D.Colo.1978), involving an Infection Control Committee report, with factual data mixed with opinion, as supporting her motion to compel disclosure. But that case is distinguishable. The court observed the report's mixed nature and indicated the review committee there involved, unlike the one in *Bredice,* had functioned as a part of the current care of the patient and not in the nature of a retrospective review of the effectiveness of certain medical procedures.

Here, the defendant has represented that there are only two documents which have not been disclosed: (1) the minutes of the Medical Utilization Review Committee which was called for the purposes of reviewing Mr. Mewborn's case after his

death; and (2) a report to the Acting Superintendent of Saint Elizabeths Hospital from the Director of John Howard Pavilion also containing a retrospective review of Mr. Mewborn's case as well as a discussion relating to possible self-improvement by the hospital. Plaintiff has not questioned the accuracy of these representations. Thus, it clearly appears that the two reports within the scope of the request and motion to compel are retrospective in nature.

Plaintiff has also endeavored to distinguish *Bredice* by claiming that plaintiff's decedent here was in a prison and not a hospital. The Magistrate rejects this attempted distinction and hereby adopts a functional analysis which considers the substance of the relationship. That relationship, in this case, was clearly a medical one. As defendant has asserted, Mr. Mewborn was committed to Saint Elizabeths Hospital for treatment and it is that very medical treatment which plaintiff questions in this lawsuit. Cf. *Jones v. United States,* —— U.S. ——, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983). As the Supreme Court made clear in *Jones,* the purpose of commitment following an insanity acquittal, like that of civil commitment, is to treat the individual's mental illness and protect him and society from his potential dangerousness. —— U.S. at ——, 103 S.Ct. at 3051. This view appears in both the majority and the dissenting opinions in the case, the dissenting justices disagreeing with the majority on whether due process requires a separate civil commitment procedure after the expiration of the time for which the insanity acquittee could have been sentenced had he been convicted and proof by the government of mental illness and dangerousness by clear and convincing evidence.

With reference to investigative reports concerning the incident of Mr. Mewborn's suicide on June 4, 1980, those reports prepared by or at the request of Saint Elizabeths Hospital's Legal Advisor's Office, are not now sought by counsel for the plaintiff. In the plaintiff's post-argument memorandum, counsel has represented that what is requested "is the product, not of attorneys, but of physicians and investigators" and "investigative reports made in the regular course of business, and not at the direction of attorneys." Cf. *Janicker v. George Washington University,* 94 F.R.D. 648 (D.D.C.1982). However, this does not mean that every document prepared by an attorney or at direction of counsel is work product or prepared in anticipation of litigation. See *Binks Manufacturing Company v. National Presto Industries, Inc.,* 709 F.2d 1109 (7th Cir.1983). Plaintiff here, however, has not challenged the defendant's invocation of the work-product privilege as to reports prepared by or for Saint Elizabeths Hospital's Legal Advisor's Office or made any showing that they were not prepared in anticipation of litigation. Therefore, this aspect of the motion to compel should be denied.

Based on the foregoing analysis and reasons, it is concluded that plaintiff's motion to compel shall be and is hereby this 6th day of March, 1984 DENIED.