**Julie M. WHITMAN, by her father and next friend, David S. WHITMAN individually and Ann C. Whitman**

v.

**UNITED STATES of America et al.**

No. C82–542–L.

United States District Court, D. New Hampshire.

March 27, 1985.

**6**

Paul R. Schneider, Posternak, Blankstein & Lund, Boston, Mass., Stephen L. Tober, Aeschliman & Tober, Portsmouth, N.H., for plaintiffs.

Richard V. Wiebusch, U.S. Atty., Concord, N.H., for defendant.

### ORDER ON APPEAL OF MAGISTRATE'S ORDER DENYING THE PRODUCTION OF DOCUMENTS

LOUGHLIN, District Judge.

This case comes before this court pursuant to the Federal Torts Claims Act, 28 U.S.C. § 1346(b), § 2671 *et seq.* Plaintiffs' complaint alleges medical malpractice under the above act as a result of actions performed by Doctors Looser and Denker. These acts included the surgical removal of a swollen lymph node under Julie Whitman's right ear. Their allegations claim the doctors were negligent in recommending surgery, failing to obtain informed consent, failing to disclose the extent of surgery, and expanding the scope of the operation beyond what the doctors told the parents. The plaintiffs also allege the doctors negligently performed the surgery. Plaintiffs claim the doctors negligently placed a suture around a nerve causing Julie Whitman's facial paralysis.

During the course of discovery, plaintiffs were told by Dr. Denker that a peer review committee hearing took place at Pease Air Force Base Hospital, one or two months after the operation. Plaintiffs requested records of this review and defendants objected. On October 12, 1984 Magistrate Barry denied plaintiffs' motion for production of documents without a hearing or without submission of a memorandum of law. Subsequently, the Magistrate denied a motion for rehearing. On November 16, 1984 this court extended the time for filing briefs and remanded the case for oral argument before the Magistrate. On January 14, 1985 the Magistrate denied plaintiffs' motion relying on *Bredice v. Doctor's Hospital Inc.*, 50 F.R.D. 249 (D.D.C.1970); 51 F.R.D. 187 (1970). On January 17, 1985 the plaintiffs objected to the Magistrate's order and appealed to this court under Fed. R.Civ.P. 72(a).

Under the provisions of 28 U.S.C. § 636 the court may designate a magistrate to hear and determine certain pretrial matters before the court and in particular certain discovery matters as are currently before the court. Reconsideration of a Magistrate's order is specifically limited however. 28 U.S.C. § 636(b)(1)(A) reads:

> ... A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

*Rockwell Intern. Inc. v. Pos-A-Traction Industries*, 712 F.2d 1324 (9th Cir.1983); *Pascale v. Searle*, 90 F.R.D. 55 (D.R.I. 1981).

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows for broad discovery stating: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." The Federal Rules do not define "privilege" but "the term is generally understood to refer to those evidentiary privileges applicable at trial". *Robinson v. Magovern*, 83 F.R.D. 79, 84 (W.D.Pa. 1979) (citing *United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953); *Boyd v. Gullett*, 64 F.R.D. 169 (D.Md.1974)). This action arises under a federal question and thus under Federal Rule of Evidence 501, federal law, will apply. *Robinson*, 83 F.R.D. at 85.

The magistrate's decision to deny plaintiffs' motion rests on *Bredice v. Doctor's Hospital* which states:

Confidentiality is essential to effective functioning of these staff meetings; and these meetings are essential to the continued improvement in the care and treatment of patients. Candid and conscientious evaluation of clinical practices is a *sine qua non* of adequate hospital care. To subject these discussions and deliberations to the discovery process, without a showing of exceptional necessity, would result in terminating such deliberations. Constructive professional criticism cannot occur in an atmosphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit.

The purpose of these staff meetings is the improvement, through self-analysis, of the efficiency of medical procedures and techniques. They are not a part of current patient care but are in the nature of a retrospective review of the effectiveness of certain medical procedures. The value of these discussions and reviews in the education of the doctors who participate, and the medical students who sit in, is undeniable. This value would be destroyed if the meetings and the names of those participating were to be opened to the discovery process.

50 F.R.D. at 250.

The *Bredice* decision was recently affirmed in *Mewborn v. Heckler*, 101 F.R.D. 691 (D.D.C.1984). In *Mewborn*, the court reiterated the principles laid out in *Bredice*. Furthermore the court said that the 1983 amendments to Rule 16 suggested even stronger reasons to follow *Bredice*. The amendments were designed "to curtail discovery abuse and to limit discovery to what is necessary to develop the facts which will support a litigant's claim". *Mewborn*, 101 F.R.D. at 693. Both the *Bredice* and *Mewborn* decisions emphasize that if the raw factual data is available from the hospital reports, there is no need to require disclosure of peer review findings. These findings will be compelled only where an "extraordinary necessity" is shown. *Id.; Bredice*, 50 F.R.D. at 250.

The *Mewborn-Bredice* line of cases illustrate that the federal law now recognizes a privilege protecting hospital peer review records from disclosure during discovery. However, federal law does not extend unlimited protection to information shielded by evidentiary privileges. The court in *Robinson v. Magovern* noted:

Evidentiary privileges operate to exclude relevant information from the fact finder and thus are not favored. The Supreme Court has stated: "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039, 1065 (1974).

83 F.R.D. at 85.

It is well accepted that an evidentiary privilege may be waived by the actions or inactions of the party claiming the protections:

A privilege may be waived by allowing a deponent to review a document for the purposes of refreshing his recollection, by testifying in an examination before trial as to matters covered by the attorney-client privilege or by voluntarily surrendering reports to an opposing party or orally disclosing matters to that party at a pretrial conference.

10 *Federal Procedure L.Ed.* § 26:27 (1982). Furthermore, the voluntary disclosure of part of a privileged communication also acts to waive the privilege's protection to the whole subject matter. *Handgards Inc. v. Johnson & Johnson*, 413 F.Supp. 926 (D.Cal.1976); *International Telephone and Telegraph Corp. v. United Telephone Company of Florida*, 60 F.R.D. 177 (M.D. Fla.1973).

In *Daniels v. Hadley Memorial Hospital*, 68 F.R.D. 583 (D.D.C.1973) the party asserted the privilege concerning statements made to her insurer. Later the party admitted during her deposition that she gave the statement to the agent, confirmed some parts of the statement and denied other parts. The *Daniels* court said:

Testifying in examination before trial is a waiver of the privilege as to the communications disclosed. And it need not be shown that the defendant knowingly waived the privilege, for partial disclosure itself is considered sufficient under the notion that "it is unfair for the client to insist on the privilege thereafter", McCormick, *Evidence*, (2d ed. 1977) § 93 at 194, n. 14.

*Daniels*, 68 F.R.D. at 587. Waiver of privilege during discovery was also upheld in *W.R. Grace Co. v. Pullman, Inc.* 74 F.R.D. 80 (D.C.Okla.1977) and *Brockway Glass Co. v. Hartford-Empire Co.*, 36 F.Supp. 470 (W.D.N.Y.1941).

 The evidence supplied by plaintiffs' Exhibit A to their memorandum of law in support of their motion dated October 29, 1984 clearly shows that defendant voluntarily disclosed information claimed to be privileged.

During the deposition of Dr. Denker, he volunteered that a peer review hearing took place at Pease Air Force Base Hospital within two months of the operation on Julie Whitman. He stated the following people were present at the peer review hearing: the Hospital Commander, the Chief of Hospital Services and Chief of Obstetrics and Gynecology, John Bristow, and other officers in charge of the quality of care. During his deposition Dr. Denker admitted that a record was kept of the peer review hearing and that an Ear, Nose and Throat Specialist was contacted to review these findings and give a judgment. Dr. Denker also stated that the specialist concluded he "didn't think the job was too good" and that Dr. Denker should not have used stick ties when doing surgery on the parotid gland. Finally, he stated the specialist opined that if a surgeon is to do anything in the parotid he should perform the four and a half hour operation.

The plaintiffs maintain that the injuries sustained were due to the defendant doctor's negligent placement of a suture around a nerve, causing facial paralysis. Dr. Denker's testimony during the deposition indicates that the peer review hearing produced testimony relevant to the plaintiff's cause of action. The record of the review hearing was sufficient to enable an ear, nose, throat specialist to render an opinion on the medical technique used. The information obtained from Dr. Denker's deposition indicates that the peer review record may contain information regarding the proper techniques that could have been used and may discuss which ones were actually used. All of these matters are certainly relevant to this cause of action. Several courts have stated that although qualified privileges must be protected that protection is not absolute. The privileges, "must yield if to enforce them would produce a miscarriage of justice". *Deitchman v. E.R. Squibb & Sons Inc.*, 740 F.2d 556, 560–61 (7th Cir.1984) (citing *Branzburg v. Hayes*, 408 U.S. 665, 709–10, 92 S.Ct. 2646, 2670–71, 33 L.Ed.2d 626 (1972) and other cases).

Dr. Denker's testimony at his deposition constituted a waiver of the defendant's qualified privilege. His testimony informed the plaintiffs of the individuals present at the peer review hearing and the experts' opinion on the procedure used during the operation.

Finally, the evidence indicates that the peer review was not made in preparation for litigation but was a retrospective analysis compiled for the purpose of advancing medical treatment. As stated in *Bredice*, "The purpose of these staff meetings are the improvement through self-analysis of the efficiency of medical techniques." *Bredice*, 50 F.R.D. at 250. The privilege protecting peer reviews originates from this purpose and it cannot now be said that the review was made for another purpose, namely litigation.

The facts of this case demonstrate that litigation was not in mind during the peer review. The medical care which plaintiff received in September, 1980 resulted in facial paralysis of Julie Whitman and the initiation of this action. In his deposition Dr. Denker stated that the review was made within two months of the operation. This would be either October or November,

1980. The complaint was filed on September 30, 1982, almost two years later.

Furthermore, findings and reports "made in the regular course of business and not at the direction of attorneys" are not protected by the work product rule. *Mewborn v. Heckler*, 101 F.R.D. at 694 (citing *Janicker v. George Washington University*, 94 F.R.D. 648 (D.D.C.1982)). To be entitled to the protection of the work product rule, the material must have been generated in preparation for litigation. The prospect of future litigation is insufficient. *Binks Manufacturing Co. v. National Presto Industries*, 709 F.2d 1109, 1120 (7th Cir.1983). It is clear that this peer review record is not protected by the work product rule.

In light of the aforementioned reasons, it is clear that the Magistrate's order denying production of the peer review record made at Pease Air Force Base Hospital during October-November, 1980 was clearly erroneous. This court thus orders the defendants to produce all the records of the peer review for the purpose of discovery.

It is So Ordered.